# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| **PERRY R. ADERHOLT**, | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| v. | ) **CIVIL ACTION NO.** |
| | ) **6:11-CV-00829-KOB** |
| | ) |
| **MICHAEL J. ASTRUE**, | ) |
| **Commissioner of the Social**, | ) |
| **Security Administration** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

## I. INTRODUCTION

On August 22, 2005, the claimant, Perry Aderholt, completed an application for disability insurance benefits under Title II of the Social Security Act. The claimant alleged disability commencing on December 14, 2004, because of back pain. (R. 75). The Commissioner denied the claim, and the claimant filed a timely request for a hearing before an Administrative Law Judge (ALJ), which the ALJ held on May 16, 2007. (R. 37). In a decision dated June 15, 2007, the ALJ found the claimant not disabled as defined by the Social Security Act and, thus, ineligible for disability insurance benefits. (R. 43). On December 20, 2007, the Appeals Council remanded claimant's case to the ALJ because the ALJ improperly weighed the evidence of a non-medical source. (R. 59). On August 8, 2008, the ALJ held a hearing on remand; however, no medical expert testified, and the ALJ held a supplemental hearing on January 23, 2009. (R. 274, 288, 290). In a decision dated June 3, 2009, the ALJ again found that the claimant was ineligible for disability insurance benefits because he is not disabled as defined by the Social Security Act. (R. 24). On

1

January 3, 2011, the Appeals Council refused to grant review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 3). The claimant has exhausted his administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3). For the reasons stated below, this court affirms the decision of the Commissioner.

## II. ISSUES PRESENTED

I.   Whether the ALJ erred by according little weight to the opinion of Dr. Floyd Johnson, an examining physician, and substantial weight to the opinion of Dr. Allan Levine, a non-examining physician.

II.  Whether the ALJ supported his decision with substantial evidence despite not basing his findings on *all* the evidence in the record.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 401 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record that support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence that conflicts with the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986). The court must scrutinize the totality of the record "to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions,

including determination of the proper standards to be applied in evaluating claims." *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." To make this determination the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[1]

To establish disability, the claimant has the burden of proving the first three steps: namely that (1) she is not engaged in substantial gainful activity; (2) she has a severe impairment or combination of impairments; and (3) her impairment or impairments meet or exceed the criteria in the Listings found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant cannot prove that he

---

[1] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) was a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. Unit A 1981).

has a listed impairment, he must prove alternatively that he is unable to perform his previous work. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *see also Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990). Once the claimant shows that he cannot perform his previous work, the burden shifts to the Commissioner "to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Jones v. Apfel*, 190 F.3d at 1228.

As a general rule, the opinion of an examining physician is usually entitled to more weight than the opinion of a non-examining physician. *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985). However, in evaluating physician's opinions, "the [ALJ] may reject any medical opinion," including that of a treating or consulting physician, "if the evidence supports such a contrary finding." *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). While the ALJ must articulate specific reasons for rejecting the treating or consulting physician's opinion, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Dyer v. Barnhart*, 935 F.3d 1206, 1222 (11th Cir. 2005); *see Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). When the ALJ articulates specific reasons for rejecting a physician's opinion and substantial evidence supports those reasons, no reversible error exists. *See Moore*, 405 F.3d at 1212. A reviewing court may not re-weigh the evidence, and "credibility determinations are the province of the ALJ." *Id.*

## V. FACTS

The claimant has an eleventh grade education and was forty-four years old at the time of the supplemental hearing. His past work experience includes employment as a construction laborer, fiberglass worker, industrial cleaner, mobile home assembler, delivery driver, and

concrete mixing truck driver. Though alleging a disability onset date of December 14, 2004, the claimant testified that in July 2004 injuries resulting from construction work caused his back pain. (R. 256-57, 269, 292).

*Physical Limitations*

On September 17, 2000, November 27, 2001, and March 19, 2002, the claimant visited Carraway Burdick West Medical Center where he exhibited back pain each time. An X-ray taken on November 27, 2001 showed that the claimant had L5-S1 degenerative changes; however, the report gave no explanation for the observations and diagnoses described. The report from the March 19, 2002 visit stated that the claimant had an acute myofascial strain; had been unable to work construction for a month; and had no health problems in his past medical/surgical history (R. 164-176).

On May 5, 2004, Dr. Bernard Simiertisch, a treating physician, diagnosed the claimant with chronic back pain. The report gave no indication of Dr. Simiertisch's specialty or place of practice. (R. 187). On June 21, 2005, the claimant visited Dr. Simiertisch who prescribed Soma and Lortab to relieve pain caused by the claimant working construction the previous day. (R. 183). The claimant saw Dr. Simiertisch on February 15, 2006 for back and hip pain and on May 4, 2006 for back pain originating between the claimant's shoulders. (R. 197, 199). After yard work, the claimant saw Dr. Simiertisch on March 29, 2007 for back pain that continued to affect the claimant during an allergy-related visit on April 25, 2007. (R. 204-6). The claimant sought medical treatment from Dr. Simiertisch three more times: on September 19, 2007 for an acute lumbar strain; on February 12, 2008 for back pain resulting from yard work; and on March 12,

2008 for back pain and eye pain. (R. 209-10, 218, 220).

On September 20, 2008, the claimant received a consultant examination from Dr. Lloyd Johnson at the request of the ALJ. Dr. Johnson's evaluation showed that the claimant had a good range of motion in the cervical spine; a decreased range of motion in the lumbar spine; a slight limp; a slight weakness of dorsiflexion in his right great toe; a straightening of the normal cervical curve; and a six-degree scoliosis of the lumbar spine. In Dr. Johnson's opinion, the claimant would have difficulty with prolonged "sitting, standing, walking, excessive lifting or carrying." Additionally, Dr. Johnson stated that the claimant could get off and on the examination table without assistance, handle large and small objects, and travel; however, the claimant would have difficulty with overhead work. Dr. Johnson conducted a straight leg test that garnered a positive in the right leg at forty degrees and in the left leg at sixty degrees.[2] (R. 155, 222-23).

Dr. Johnson completed a medical source opinion (MSO) to assess the claimant's work-related capabilities. Dr. Johnson determined that the claimant could stand for thirty minutes at one time for a total of two hours per eight hour day; walk for thirty minutes at one time for a total of two hours per eight hour day; and sit for thirty minutes at one time for a total of three hours per eight hour day. Also, Dr. Johnson found that the claimant could occasionally lift thirty pounds, carry fifteen pounds, and push or pull with his left leg. Dr. Johnson determined that the claimant could frequently push and pull with his arms, constantly use his hands, and

---

[2] According to the reviewing medical expert's testimony (Dr. Allan Levine), this result is often an attempt by physicians to quantify back pain. When combined with atrophy of the extremities, such a result could indicate nerve root impingement. However, in Dr. Levine's opinion, the record does not mention any loss of sensation or other symptoms related to nerve root impingement. (R. 310-12).

communicate with others. However, Dr. Johnson found that the claimant could never climb, balance, stoop, kneel, crouch, or crawl. (R. 226-27).

With respect to the claimant's ability to work in various environments, Dr. Johnson stated that the claimant could frequently drive automotive equipment and work while exposed to extreme heat, fumes, noxious odors, dust, mists, gases, or poor ventilation. Lastly, the MSO showed that the claimant could occasionally work in extreme cold, around vibration, and in proximity to moving mechanical parts; however, he could never work in high places. (R. 228).

On March 17, 2009, the claimant received an examination from neurologist Dr. Eston G. Norwood, III, at the request of the ALJ. (R. 162, 229). Dr. Norwood opined that neurologically speaking the claimant had no impairment to conduct work-related activities. *Id.* Like Dr. Johnson, Dr. Norwood completed a medical source evaluation assessing the claimant's work-related capabilities. Dr. Norwood determined that the claimant could lift and carry ten pounds continuously, eleven to fifty pounds frequently, and fifty-one to one hundred pounds occasionally. Dr. Norwood found that the claimant could stand for thirty minutes at one time for a total of two hours per eight hour day; walk for thirty minutes at one time for a total of two hours per eight hour day; and sit for thirty minutes at one time for a total of four hours per eight hour day. In contrast to Dr. Johnson, Dr. Norwood established that the claimant could occasionally climb, stoop, kneel, crouch, or crawl, but agreed that reaching overhead would cause difficulties. (R. 231). Short of very loud noise like that produced by a jackhammer, Dr. Norwood found no environmental related limitations to the claimant's work capabilities. (R. 235).

*The ALJ Hearing*

After a denial of the claimant's request for disability insurance benefits by the Commissioner, a hearing before the ALJ, a remand from the Appeals Council, and a second hearing, the claimant received a supplemental hearing before the ALJ on January 23, 2009. (R. 37, 59, 274, 288).

At the hearing, the claimant testified that his pain was in his lower back and shoulders. He testified that, in terms of pain, some days are better than others depending on his activity the previous day. The claimant testified that his legs go to sleep, particularly the right one, and he believes this issue is connected to his back pain. To relieve his pain, the claimant takes Lortab when he can afford medical treatment; takes over the counter medications, like Tylenol, when he cannot afford the prescription medication; and lays on his right side frequently. With these remedies, his pain generally ranks an eight on a scale of one to ten. (R. 295-97).

The claimant testified that he can sit or stand for thirty minutes before experiencing back pain. He also testified that he could walk for one or two blocks without pain. The claimant testified that he could not bend, stoop, or raise his arms above his head without pain. The claimant claimed to have difficulty picking up objects heavier than a half gallon of milk. He also testified that he never attended physical therapy. The claimant testified that he could drive about ten miles without discomfort; however, the claimant found longer distances or bumps in the road bothersome. Lastly, the claimant testified that the pain in his shoulders affects his ability to move his head without discomfort and that cold temperatures worsen his pain. (R. 298-302).

A non-examining medical expert, Dr. Allan Levine, testified regarding the medical evidence in the record. (R. 303-13). Dr. Levine testified that the record reflected medically

determinable impairments of chronic lower back pain, secondary to lumbosacral strain, and degenerative disk disease. He testified that no neurological deficits or medically determinable impairment of the cervical spine exist. Dr. Levine testified that he did not believe that the claimant's impairments met the Listings. Dr. Levine testified that Dr. Johnson reported depressed motion of the great toe and visual impairment that caused the claimant to lose his driver's license. However, Dr. Levine stated that Dr. Norwood's report (taken after Dr. Johnson's) and the claimant's testimony regarding his ability to drive contradicted Dr. Johnson's findings. (R. 305-7).

Dr. Levine testified that laying tile, working in the yard, and working on a roof–activities the claimant engaged in before a number of his doctor visits–were inconsistent with a back impairment that met the Listings. (R. 307-08). Dr. Levine testified that a straight leg raise test was insufficient to suggest nerve root damage, as the claimant did not exhibit other symptoms normally associated with such damage. Dr. Levine testified that, if a patient presented impairments like those described by Dr. Johnson, he would order an MRI to further inquire into potential nerve damage. Lastly, Dr. Levine testified that inconsistency exists between the great toe depression mentioned in Dr. Johnson's report and the medical record as a whole. (R. 310-12).

A vocational expert, Ms. Neel, testified concerning the type and availability of jobs that the claimant was able to perform. (R. 314-21). Ms. Neel questioned the claimant regarding his past work and established that he had been a truck driver and a framing carpenter. The ALJ asked Ms. Neel if a hypothetical individual with the age, education, training, limitations, and prior work history, as described by Dr. Levine's testimony, could perform the claimant's prior work. Ms. Neel testified that the hypothetical individual would not be able to perform the prior work;

however, such an individual could perform other jobs in the national economy, such as that of an inspector, a cashier, or a clerk. (R. 315-19).

Counsel for the claimant then questioned Ms. Neel. Counsel asked Ms. Neel to refer to Dr. Johnson's MSO, which expressed the opinion that claimant could only work for seven hours in a work day. Ms. Neel remarked that such a limitation would preclude an individual from full-time work. At the close of the hearing, counsel for the claimant requested that the ALJ inquire whether the Social Security Administration would pay for an MRI for the claimant. The ALJ stated that he would so inquire and would relate the answer to counsel before issuing his decision. (R. 320-22).

*The ALJ's Decision*

On June 3, 2009, the ALJ issued a decision finding the claimant was not disabled under the Social Security Act. (R. 12). First, the ALJ found that the claimant last met the insured status requirements of the Social Security Act on December 31, 2006. Next, the ALJ found that the claimant did not engage in substantial gainful activity between the alleged onset of disability and December 31, 2006. The ALJ then found that the claimant had the severe impairments of mild degenerative disc disease of the lumbar spine and lumbar strain. To support this finding, the ALJ recounted the medical record of the claimant mentioning the multiple visits to Dr. Simiertisch and the consultations with Dr. Johnson and Dr. Norwood. The ALJ found that such impairments did not meet the Listings. (R. 17-20).

The ALJ determined next that the claimant had the residual functioning capacity (RFC) to perform light work through the date last insured, as defined in 20 C.F.R. 401.1567(b). To that end, the ALJ found that the claimant could lift ten to twenty pounds frequently and sit or stand

for thirty minutes at one time for a total of six hours out of an eight hour day.[3] The ALJ found the claimant capable of occasionally climbing stairs, kneeling and crouching, but that the claimant should avoid stooping, crawling, vibration, extreme cold, working around unprotected heights, and lifting above shoulder level. To support his conclusion, the ALJ pointed to the claimant's ability to do the following: drive an average of thirty miles each week; easily walk about and sit in the hearing room; lay tile; and be on a roof. The ALJ found these actions by the claimant inconsistent with claimant's assertion of disability.

Additionally, the ALJ pointed to the claimant's lack of prescription medication and long periods without medical treatment as support for his conclusions. Specifically, the ALJ cited Dr. Johnson's records to show that in September 2008, when the claimant visited Dr. Johnson, the claimant was not seeing any doctors and only took over-the-counter medication for pain. The ALJ dismissed the claimant's assertions that he did not visit doctors or take medication because of insufficient funds by noting that the claimant continued to smoke two packs of cigarettes each day costing an estimated $1,670 per year. The ALJ stated that the claimant could easily use the money budgeted for tobacco to see a physician or buy medication if the claimant really needed to do so.

Further explaining his RFC, the ALJ stated he afforded little weight to Dr. Johnson's opinion, considerable weight to Dr. Norwood's opinion, and substantial weight to Dr. Levine's opinion. The ALJ found that Dr. Johnson's opinion "differ[ed] from the other medical evidence as well as the testimony of [Dr. Levine]." In support of this statement, the ALJ mentioned Dr.

---

[3] The text of the opinion reads, "[h]e cant [sic] sit and stand for six hours out of an eight hour day . . . " ( R. 20). However, the omitted apostrophe in "cant" and the ALJ's adoption of testimony stating the claimant *could* sit and stand for six hours out of an eight hour day suggest a typographical error and not a contradictory finding.

Levine's testimony that Dr. Johnson's report "showed problems with the left great toe, but other exhibits did not state anything about loss of strength in the great toe." Also, the ALJ stated that Dr. Levine, after reviewing Dr. Johnson's objective findings, testified that he did not agree with the limitations described by Dr. Johnson. Ultimately, the ALJ stated that he based his RFC on the medical expert testimony, "the claimant's activities of daily living, and his long history of no medical treatment or use of medication for pain." Upon review of those factors, the ALJ determined that the claimant's condition was not of sufficient severity to be considered disabling as defined by the Social Security Act. (R. 20-22).

Next, the ALJ determined that the claimant could not perform past relevant work. The ALJ additionally determined that the claimant was a younger individual on the date last insured; had a limited education at the time of hearing; and was not disabled under Medical-Vocational Rules making the transferability of the claimant's job skills immaterial. (R. 22-23).

The ALJ concluded that jobs existed in significant numbers in the national economy that the claimant could perform. To support his conclusion, the ALJ cited the testimony of the vocational expert who stated that the claimant could be an inspector, a cashier, or a clerk. Finally, the ALJ concluded that the claimant was not disabled, as defined by the Social Security Act, at any time from the onset of the alleged disability to the date last insured. (R. 23-24).

## VI. DISCUSSION

The claimant argues that the ALJ committed reversible error by not basing his opinion on substantial evidence when he improperly weighed medical opinions and did not use all the evidence in the record. To the contrary, this court finds that the ALJ properly weighed the medical opinions before him, considered the totality of the record, and based his decisions on

substantial evidence. As such, this court finds that substantial evidence supports the ALJ's decision and that the ALJ's decision is due to be affirmed.

>    I.   **Whether the ALJ erred by according little weight to the opinion of Dr. Floyd Johnson, an examining physician, and substantial weight to the opinion of Dr. Allan Levine, a non-examining physician.**

Generally, an examining physician's opinion is entitled to more weight than a non-examining physician's opinion. *Broughton v. Heckler*, 776F.2d 960, 961-62 (11th Cir. 1985). However, "the [ALJ] may reject any medical opinion," including that of a treating or consulting physician, "if the evidence supports such a contrary finding." *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). While the ALJ must articulate specific reasons for rejecting the treating or consulting physician's opinion, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Dyer v. Barnhart*, 935 F.3d 1206, 1222 (11th Cir. 2005); *see Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). When the ALJ articulates specific reasons for rejecting a physician's opinion and substantial evidence supports those reasons, no reversible error exists. *See Moore*, 405 F.3d at 1212.

The claimant makes a number of arguments collectively asserting that the ALJ erred because he did not accord Dr. Johnson's opinion more weight. This court disagrees. The ALJ stated that he afforded Dr. Johnson's opinion little weight. To support this decision, the ALJ stated that "it differs from the other medical evidence as well as the testimony of the Medical expert." (R. 22). Specifically, the ALJ noted that Dr. Levine (the Medical Expert) testified that Dr. Johnson's report "showed problems with the left great toe, but other exhibits did not state anything about loss of strength in the great toe." (R. 21). Also, the ALJ stated that "Dr. Levine reviewed the objective findings of Dr. Johnson, and testified that he did not agree with the

limitations expressed by Dr. Johnson." (R. 22).

A review of the record confirms that only Dr. Johnson's report mentioned limitations of the left great toe. Dr. Levine testified that the claimants activities, such as laying tile, working in the yard, driving a car, and working on a roof, were inconsistent with Dr. Johnson's findings. He testified that the results of the straight leg test that Dr. Johnson conducted could suggest nerve root impingement; however, the claimant exhibited none of the expected ancillary side effects of such an impairment. Dr. Levine also testified that Dr. Johnson's report mentions vision loss resulting in the claimant losing his license; yet, Dr. Levine found that the claimant's own testimony that he drives regularly contradicted these findings. Therefore, substantial evidence supports the specific reasons the ALJ gave to support according little weight to Dr. Johnson's opinion.

Moreover, the ALJ adopted Dr. Johnson's opinion so far as it showed that the claimant was not habitually visiting a doctor or taking prescription medication at the time Dr. Johnson examined him. The ALJ cited this fact—the claimant not taking medication or seeking medical treatment—as support for discrediting the claimant's subjective complaints of pain. Though this citation by the ALJ does not refer to Dr. Johnson's medical opinion, a critical factor in his discrediting of the claimant's testimony was the claimant's lack of frequent medical treatment. In sum, this court finds that the ALJ appropriately accorded Dr. Johnson's opinion little weight. as part of his decision. (R. 21-22).

Claimant calls upon a number of Eleventh Circuit cases to support his argument. Based on the analysis below, this court finds none persuasive. Claimant cites *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990) for the proposition that the opinions of non-examining

physicians, taken alone, do not constitute substantial evidence nor should they receive more than little weight. (Pl. Br. 15). Here, the ALJ did not take the opinion of Dr. Levine (the only non-examining physician) alone. Rather, the ALJ referenced in his opinion the work of two consulting physicians and the actions of the claimant.

The claimant points to *Spencer on behalf of Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985) to assert that the Eleventh Circuit affords no weight to reports by physicians who merely check boxes on forms with no elaboration. First, this argument works against the claimant, as both *consulting* physicians, Dr. Johnson and Dr. Norwood, merely checked boxes on their forms, whereas Dr. Levine provided testimony before the ALJ without the cursory completion of forms. (R. 226-28, 302-313). Second, while *Spencer* factually involved a physician who merely checked boxes, the claimant's characterization of *Spencer*'s holding is incorrect. *Spencer* holds that the Eleventh Circuit accord's "little weight to the opinion of a reviewing physician if it is contrary to the opinion of the *only* physician to examine the patient." *Spencer*, 765 F.2d at 1094 (emphasis added) (quoting *Warncke v. Harris*, 619 F.2d 412, 416 (5th Cir. 1980)). Here, more than one physician examined the claimant. Additionally, Dr. Levine's testimony is not contrary to Dr. Norwood's opinion--an examining physician. Therefore, *Spencer* does not apply.

The claimant argues that *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1984) stands for the proposition that opinions of examining physicians generally receive more weight than non-examining physicians. Such argument correctly states the law, but based on the analysis above regarding the ALJ's weighing of the medical opinion evidence, this court finds no conflict with *Broughton*. The claimant cites *Lamb v. Bowen*, 847 F.2d 698 (11th Cir. 1988), *Sharfarz v.*

*Bowen*, 825 F.2d 278 (11th Cir. 1987), and *Ortega v. Chater*, 933 F. Supp. 1071, 1074 (S.D. Fla. 1996) to claim that when non-examining and examining physician opinions conflict, the non-examining physician's opinion is entitled to little weight. For the following reasons, this court finds none of these cases persuasive in the context of this case.

      First, *Ortega* does not apply. In *Ortega*, the ALJ failed to accord proper weight to a *treating* physician whose opinion was consistent, extensive, and substantiated by objective medical evidence. *See Ortega*, 933 F. Supp. at 1074-75. Here, Dr. Johnson was not a treating physician, nor was his report consistent, extensive, or substantiated by objective medical evidence. Additionally, the Southern District of Florida decided *Ortega*; thus, *Ortega* does not bind this court.

      Second, *Lamb* and *Sharfarz* stand for slightly different propositions than the claimant asserts. *Lamb*, by citing to *Sharfarz*, states that opinions of non-examining physicians that conflict with examining physician's opinions are entitled to little weight "*and standing alone* do not constitute substantial evidence." *Lamb*, 847 F.2d at 703 (emphasis added) (quoting *Sharfarz*, 825 F.2d at 280). Here, the ALJ did not rely on any piece of evidence alone; rather, the ALJ "based [his opinion] on medical expert testimony, the claimant's activities of daily living, . . . his long history of no medical treatment or use of medication for pain, . . . the objective medical evidence, . . . [and] the hearing testimony." (R. 22). Additionally, the ALJ supported his RFC with Dr. Norwood's findings that the claimant was capable of "shopping, traveling without a companion for assistance, preparing small meals, caring for personal hygiene and sorting, handling and using paper/files." (R. 22). Thus, this court finds no conflict with the holdings of *Lamb* and *Sharfarz* as substantial evidence supports the ALJ's decision.

### II. Whether the ALJ supported his decision with substantial evidence despite not basing his findings on *all* the evidence in the record.

This court's review of the Commissioner's decision is limited; if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence, this court must affirm. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996,999 (11th Cir. 1987). A reviewing court may not re-weigh the evidence, and "credibility determinations are the province of the ALJ." *Moore*, 405 F.3d at 1212. No requirement that the ALJ "specifically refer to every piece of evidence in his decision" exists. *Dyer*, 935 F.3d at 1222.

The claimant argues that the ALJ erred by not mentioning and utilizing *all* of the evidence in his opinion. Tellingly, in making his argument, the claimant cites no legal standard that the ALJ misapplied. As *Dyer v. Barnhart* makes clear, no such requirement exists. *Dyer*, 935 F.3d at 1222. However, a number of claimant's sub-arguments could be construed to allege that substantial evidence does not support some of the ALJ's factual conclusions. Because a reviewing court may not re-weigh the evidence or supplant the credibility determinations of the ALJ, this court reviews the claimant's allegations to determine if the ALJ's factual conclusions lack the support of substantial evidence.

The claimant alleges that the ALJ focused on a single piece of evidence: the testimony of Dr. Levine. Yet, contrary to claimant's assertions and like in *Moore*, the ALJ in the present case relied on the inconsistencies between the claimant's activities and claims of infirmity in making his determination. *See Moore*, 405 F.3d at 1211-12. Here, the ALJ stated that the claimant's

smoking two packs of cigarettes a day undermined his claim of insufficient funds to pay for medical services or medications. The ALJ stated that the claimant's being on a roof and laying tile undermined Dr. Johnson's report that asserted that physical limitations forestalled the claimant from working. The ALJ additionally pointed to the claimant's ability to drive and easily walk into the hearing room as inconsistent with the claimant's contention of claimed severity of pain. These facts show that the record contains inconsistent and contradictory evidence. The ALJ had to weigh the evidence and make a credibility determination to decide which evidence to adopt. Because the ALJ supported his credibility determination with substantial evidence by citing the inconsistencies mentioned above, this court finds no reversible error.

      The claimant additionally contends that the ALJ mis-characterized Dr. Levine's testimony when the ALJ claimed Dr. Levine did not agree with the limitations expressed by Dr. Johnson. Dr. Johnson's opinion entailed a limited result in a straight leg raise test of forty degrees in the right leg. Dr. Levine testified that doctors frequently mark forty degrees to recreate the symptom of back pain in medical records. Dr. Levine also testified that such a result, when combined with the limitations of the claimant's great toe, could suggest nerve root impingement. However, Dr. Levine noted that the claimant did not have atrophy in his extremities, an expected symptom of nerve root impingement. Additionally, Dr. Levine testified that other examinations did not reflect the weaknesses described in Dr. Johnson's opinion. In sum, Dr. Levine addressed the inconsistencies and shortcomings of Dr. Johnson's opinion as compared with the totality of the record and proffered an opinion that disagreed with Dr. Johnson's opinion. As such, this court finds the ALJ's characterization of Dr. Levine's testimony supported by substantial evidence.

      The claimant notes that the ALJ utilized Dr. Simiertisch's February 2008

records–indicating the claimant did yard work the day before the medical visit–to discredit the claimant. To the contrary, claimant asserts that such evidence supports his claim of disability because it demonstrates that the primary reason for the doctor's visit was increased pain resulting from the activity. The claimant does not further develop this assertion nor argue that this determination lacks substantial evidence or involves the mis-application of a legal standard. Accordingly, this court finds no reversible error in the ALJ citing the claimant's ability to do yard work when assessing the claimant's residual functioning capacity.

The claimant argues the ALJ's decision lacks support from substantial evidence because, unlike the consulting physicians Dr. Johnson and Dr. Norwood, the ALJ found that the claimant could sit and stand for six hours out of an eight hour day. (Pl. Br. 14). However, as Dr. Norwood's records and claimant's own brief reflect, *Dr. Norwood* found that the claimant could sit and stand for six hours out of an eight hour day. (R. 232); (pl. br. 9).

The claimant cites *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986), *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986), and *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) as support for the proposition that ALJ decisions lack support from substantial evidence when they focus on one aspect of the evidence while ignoring other contrary evidence. Neither *Hillsman, McCruter*, nor *Tieniber* apply, as they give instruction to this court and not the ALJ. These three cases state that a *reviewing court* may "not look 'only to those parts of the record which support the ALJ,' but instead 'must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ.'" *Hillsman*, 804 F.2d at 1180 (quoting *Teinber*, 720 F.2d at 1253); *see McCruter*, 791 F.2d at 1548 (holding that reviewing courts must look to the whole record, not a single supporting piece of evidence for the

ALJ's decision).

In any event, the ALJ looked to more than one aspect of the record in making his decision. The ALJ's decision reflects an analysis and consideration of all medical opinion evidence, objective medical findings, and activities of the claimant. Accordingly, this court, reviewing the record as a whole, finds that substantial evidence supports the ALJ's decision.

## VII. CONCLUSION

For the reasons as stated, this court concludes that the decision of the Commissioner is supported by substantial evidence and is to be AFFIRMED.

A separate order will be entered in accordance with this Memorandum Opinion.

DONE and ORDERED this 26th day of June, 2012.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE